IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KIMBERLY ORD and KEVIN ORD, on behalf of themselves and all other persons similarly situated,**<br>**Plaintiffs,**<br><br>v.<br><br>**F.N.B. CORPORATION,**<br>**Defendant.** | CASE NO. _____<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

Kimberly Ord and Kevin Ord ("Plaintiffs"), by and through their undersigned attorneys, hereby make the following allegations against F.N.B. Corporation ("Defendant") based upon their actual knowledge and the investigation of their counsel:

## NATURE OF THE ACTION

1. Plaintiffs allege that Defendant committed a breach of contract, violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 *et seq.*, and gave rise to a claim for unjust enrichment by engaging in an unfair, deceptive and intentional practice of re-sequencing checking account transactions to assess extra overdraft fees against its account holders. Plaintiffs present these claims on their own behalf, and for a Class defined to include: 'all people in the United States who have maintained a checking account with F.N.B. Corporation during the applicable limitations period and were assessed extra overdraft charges as a result of Defendant's improper re-sequencing of transactions ("the Class members")."

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter presented by this Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the original jurisdiction of the

1

Federal Courts of any class action in which any member of the Class is a citizen of a State different from any Defendant, and in which the matter in controversy exceeds in the aggregate the sum of $5,000,000, exclusive of interest and costs. Plaintiffs alleges that the aggregated total claims of individual Class members in this action have a value of more than $5,000,000, exclusive of interest and costs, as required by 28 U.S.C. §§ 1332(d)(2) and (d)(6). Furthermore, Plaintiffs alleges that pursuant to 28 U.S.C. § 1332(d)(5)(B), the total number of members of the proposed Class is greater than 100.

3. Venue is proper in this District under 28 U.S.C. § 1391(a) because Defendant maintains its headquarters within this District, Plaintiffs reside in this District, Defendant engaged in the activities giving rise to the claims at issue in this District and Defendant has caused harm to Class members residing in this District. Venue is also appropriate in this District because Defendant has significant business contacts within this District.

## THE PARTIES

4. Plaintiffs Kimberly Ord and Kevin Ord are adult citizens of the Commonwealth of Pennsylvania who reside in Huntingdon County, PA. Plaintiffs were customers of Defendant, maintained a checking account with Defendant and were assessed extra overdraft charges as a result of Defendant's improper re-sequencing of transactions during the relevant period.

5. Defendant is a diversified financial services company that serves both individual and business customers from its corporate headquarters in Mercer County, PA. Defendant, the holding company for First National Bank, maintains more than 260 community bank offices located throughout 45 counties in Pennsylvania, Eastern Ohio and West Virginia and claims "pro forma assets" of $11.6 billion. *See http://www.fnbcorporation.com/~/media/PDF%20Files/Fact%20Sheet/Fact%20Sheet.ashx* (visited May 13, 2012). At its branch offices and online,

Defendant provides a number of financial products and services to its customers, including checking accounts and "debit cards."

## BACKGROUND FACTS

6. Defendant's customers who have checking accounts can debit their account in a variety of ways. These include the use of debit cards or paper checks. Unlike using a credit card, in which a customer accrues debt that must be paid back later on a fixed day, debit cards deduct purchase amounts directly from customers' checking accounts. Even though vendors receive their payment at the time of the transaction, Defendant does not deduct the transaction amount from its customers' accounts until the close of business. Once the business day ends, Defendant processes all of its customers' purchases for the day through a process commonly referred to as "batch processing."

7. Batch processing is the process by which Defendant re-sequences customer transactions, enabling it to pay out customers' transactions in any order it sees fit. There are two key ways Defendant can re-sequences transactions. First, Defendant re-sequences transactions processed on the same day from the highest dollar value of the transactions to the lowest dollar value of the transaction regardless of when the actual transactions occurred, *i.e.* if a customer makes a $100 purchase in the morning and a $1,000 purchase in the afternoon, Defendant processes the $1,000 purchase before the $100 purchase. Defendant also re-sequences transactions that occur on different days as if they occurred on the same day. For example, if a customer made a purchase on Saturday and another purchase on Sunday, Defendant processes these purchases together and re-sequences them from the highest dollar value of the transaction to the lowest dollar value of the transaction.

8. When a customer transaction results in the account being overdrawn, or if a customer transaction occurs while the account is overdrawn, Defendant typically covers the transaction and assesses an overdraft charge for each such transaction. Thus, Defendant charges an overdraft fee when it accepts and processes a transaction, but the customer's account lacks the funds to cover the transaction at the time Defendant decides to process it. During the relevant period, Defendant has routinely set up its computers to re-sequence customers' checking and debit card transactions from largest to smallest to increase the chance of an overdraft and enable it to assess extra overdraft fees.

9. Through these processes, Defendant re-sequenced Plaintiffs' and the Class members' checking and debit card transactions from largest to smallest and across discrete days to deplete their accounts more frequently than had these transactions been processed in the order made or received and, as a result, were able to assess and collect extra overdraft charges.

10. Banks claim that overdraft protection is available for the benefit of customers since it prevents bounced checks and resulting overdraft fees. However, most overdraft fees are not derived from checks, but from debit card transactions.

11. Banks and credit unions make enormous sums from overdraft fees. In 2008, banks and credit unions collected a total of nearly $24 billion in overdraft fees, which was a 35 percent increase from 2006:

> Banks contend that this type of overdraft protection is a service to their customers, helping them to avoid bouncing checks. They further claim that the alternative would be to return the check unpaid, with the customer incurring an NSF fee from the bank and, potentially, a bad check fee from a merchant or a late fee from a landlord or utility company.
>
> However, the reality is far different than the scenario painted by banks. Overdraft fees are most typically triggered not by checks, but by debit card transactions and ATM withdrawals that could

> easily be denied for no fee. In addition, common banking practices—such as re-ordering transactions from largest to smallest—increase the number of overdraft fees paid by customers rather than helping them avoid charges. Institutions also generally place no meaningful limits on how many fees a customer can incur within a given period. Finally, because banks generally charge a fixed overdraft fee regardless of the size of the transaction covered, the fee bears no relationship to the actual cost to the institution of covering the overdraft. In fact, previous CRL research found that consumers paid about $2 in fees for every $1 in credit extended if they overdrew their account using a debit card at a checkout counter.
>
> These practices are especially alarming given that institutions automatically enroll consumers into this type of program, even when lower-cost forms of overdraft protection—such as a formal overdraft line of credit or a link to a savings account—are usually available. Several CRL surveys have found that an overwhelming majority of respondents, including those who have recently overdrawn their account, want a choice about what—if any—form of overdraft program to enroll in and prefer that debit card overdrafts not be covered.

*See Leslie Parrish, Overdraft Explosion: Bank fees for overdrafts increase 35% in two years*, Center for Responsible Lending (October 6, 2009) (internal citations omitted) (available at http://www.responsiblelending.org/overdraft-loans/research-analysis/crl-overdraft-explosion.pdf).

12. On February 22, 2012, the Consumer Financial Protection Bureau ("CFPB") launched an investigation into the overdraft programs and overdraft fees charged by banks and other financial institutions on checking accounts to determine how these practices are impacting consumers. *See* Exhibit A. In this article, CFPB explained that consumers' ability to access funds in their checking accounts through a broad array of mechanisms – including automated teller machines ("ATMs"), point-of-sale ("POS") debit card use, Automated Clearing House ("ACH") payments, and online banking transactions – has only increased the likelihood of overdrafts.

13. Over the past few years, even as the Federal Deposit Insurance Corporation ("FDIC") and Office of the Comptroller ("OCC") have conducted surveys and issued guidelines on overdraft payment programs and practices for banks and financial institutions. *See* Exhibits B and C.

14. Nevertheless, CFPB has opined that overdraft compliance is still lacking. Overdraft fees are a huge profit center for banks and other financial institutions, and CFPB is gravely concerned about the unfair and negative financial impact that unchecked overdraft programs and excessive overdraft fees have on consumers.

**Plaintiffs' Experience with Defendant**

15. Plaintiffs held a checking account at the Mount Union, Pennsylvania branch of Omega Bank. Defendant acquired Omega Bank in 2008 and Plaintiffs opened a checking account with Defendant and were issued checks and a debit card attached to their account.

16. Through the regular use of their debit card, Plaintiffs were charged repeated overdraft fees of $37.00, which Defendant automatically deducted from their account. Many of these overdraft fees would not have occurred but for Defendant's practice of re-sequencing their transactions from largest to smallest.

17. The following table illustrates the effect of Defendant's re-sequencing practice on Plaintiffs as memorialized in their online account summary:

| Date Processed | Description | Withdrawals (-) | Deposits (+) | Account Balance |
|---|---|---|---|---|
| Plaintiffs' account balance prior to 9/19/2011 | | | | $595.89 |
| 9/19/2011 | Debit Purchase | ($288.47) | | $307.42 |
| 9/19/2011 | Debit Purchase | ($124.54) | | $182.88 |

| 9/19/2011 | Debit Purchase | ($62.56) | | $120.32 |
| --- | --- | --- | --- | --- |
| 9/19/2011 | Debit Purchase | ($35.00) | | $85.32 |
| 9/19/2011 | Debit Purchase | ($21.18) | | $61.14 |
| 9/19/2011 | Debit Purchase | ($17.47) | | $46.67 |
| 9/19/2011 | Debit Purchase | ($14.38) | | $32.29 |
| 9/19/2011 | Debit Purchase | ($14.35) | | $17.94 |
| 9/19/2011 | Debit Purchase | ($13.54) | | $4.40 |
| 9/19/2011 | Debit Purchase | ($10.06) | | ($5.66) |
| 9/19/2011 | Debit Purchase | ($10.00) | | ($15.66) |
| 9/19/2011 | Debit Purchase | ($10.00) | | ($25.66) |
| 9/19/2011 | Debit Purchase | ($9.46) | | ($35.12) |
| 9/19/2011 | Overdraft Fee | 148.00 | | |

18.   By re-sequencing Plaintiffs' September 19, 2011 transactions from largest to smallest, Defendant was able to manufacture four separate $37.00 overdraft fees, totaling $148.00.

19.   The following table illustrates that, had Defendant sequenced these same transactions from smallest to largest, Plaintiffs would have been charged only one $37.00 overdraft fee.

| Date Processed | Description | Withdrawals (-) | Deposits (+) | Account Balance |
| --- | --- | --- | --- | --- |
| Plaintiffs' account balance prior to 9/19/2011 | | | | $595.89 |
| 9/19/2011 | Debit Purchase | ($9.46) | | $586.43 |

7

| 9/19/2011 | Debit Purchase | ($10.00) | | $576.43 |
|---|---|---|---|---|
| 9/19/2011 | Debit Purchase | ($10.00) | | $566.43 |
| 9/19/2011 | Debit Purchase | ($10.06) | | $556.37 |
| 9/19/2011 | Debit Purchase | ($13.54) | | $542.83 |
| 9/19/2011 | Debit Purchase | ($14.35) | | $528.48 |
| 9/19/2011 | Debit Purchase | ($14.38) | | $514.10 |
| 9/19/2011 | Debit Purchase | ($17.47) | | $496.63 |
| 9/19/2011 | Debit Purchase | ($21.18) | | $475.45 |
| 9/19/2011 | Debit Purchase | ($35.00) | | $440.45 |
| 9/19/2011 | Debit Purchase | ($62.56) | | $377.89 |
| 9/19/2011 | Debit Purchase | ($124.54) | | $253.35 |
| 9/19/2011 | Debit Purchase | ($288.47) | | ($35.12) |
| 9/19/2011 | Overdraft Fee | 37.00 | | |

## CLASS ACTION ALLEGATIONS

20.     Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(a) on behalf of a Class defined to include:

> All people in the United States who have maintained a checking account with F.N.B. Corporation during the applicable limitations period and who were assessed overdraft charges as a result of Defendant's practice of re-sequencing checking and debit card transactions from highest to lowest amount and/or posting checking and debit card deductions before posting account credits or deposits.

Excluded from the proposed Class are Defendant, its officers, directors, and employees, and any entity that has a controlling interest in it. Plaintiffs reserve the right to amend the Class definition as necessary.

21. Plaintiffs are members of the Class they seek to represent. During the relevant period, Plaintiffs were customers of Defendant, maintained a checking account with Defendant, had a debit card issued by Defendant and were assessed extra overdraft charges as a result of Defendant's improper re-sequencing of transactions.

22. The putative Class meets the numerosity requirement of Rule 23(a)(1) because, over the relevant period, Defendant operated more than 260 community bank offices in 45 counties and had tens of thousands of checking account customers, many of whom were assessed extra overdraft charges as a result of Defendant's improper re-sequencing of transactions. The Class members will be readily identifiable using computerized records kept by Defendant in the usual course of its business.

23. The putative Class meets the commonality requirement of Rule 23(a)(2) because, over the relevant period, Defendant engaged in a common course of conduct that violated the legal rights of Plaintiffs and the Class members. Any individual questions that Plaintiffs' claims present will be far less central to this litigation than the numerous material questions of law and fact common to the Class, including:

   a. Whether Defendant's practices were deceptive, unfair, improper and/or misleading;

   b. Whether Defendant engaged in the conduct alleged herein;

   c. Whether Defendant's conduct as alleged herein constitutes breach of contract;

   d. Whether Defendant's conduct as alleged herein constitutes unjust enrichment;

   e. Whether Defendant's conduct as alleged herein violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 *et seq*:

  f. Whether Plaintiffs and Class members have sustained monetary loss and the proper measure of that loss; and

  g. Whether Plaintiffs and Class members are entitled to declaratory and injunctive relief.

24. The putative Class meets the typicality requirement of Rule 23(a)(3) because Plaintiffs and the absent Class members all maintained checking accounts with Defendant, received common literature and representations from Defendant about those accounts and have been subjected to Defendant's common course of wrongful conduct.

25. The putative Class meets the fair and adequate protection requirement of Rule 23(a)(4) because there is no apparent conflict of interest between Plaintiffs and the absent Class members, and because Plaintiffs' attorneys have successfully prosecuted many complex Class actions, including consumer class actions under the UTPCPL and claims involving an alleged breach of contract, and will adequately represent the interests of Plaintiffs and the Class members.

26. The putative Class meets the predominance requirement of Rule 23(b)(3), because issues common to the Class predominate over any questions affecting only individual members, including whether Defendant's practice of assessing extra overdraft charges as a result of the improper re-sequencing of transactions comports with Pennsylvania law.

27. The putative Class meets the superiority requirement of Rule 23(b)(3) because allowing the Parties to resolve this controversy through a class action would permit a large number of similarly-situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender.

28. Given the material similarity of the Class members' claims, even if each Class member could afford to litigate a separate claim, this Court should not countenance or require the filing of thousands of identical actions. Individual litigation of the legal and factual issues raised by Defendant's conduct would cause unavoidable delay, a significant duplication of efforts, and an extreme waste of resources. Alternatively, proceeding by way of a Class action would permit the efficient supervision of the Class' claims, give rise to significant economies of scale for the Court and the Parties and result in a binding, uniform adjudication on all issues.

## COUNT I
### Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law

29. Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

30. Defendant has engaged in fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding relating to its imposition of overdraft fees on consumers, in violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-2(4)(xxi).

31. Defendant's conduct is fraudulent or deceptive and creates a likelihood of confusion or of misunderstanding in that the harm to Plaintiffs and the Class arising from Defendant's conduct outweighs the utility, if any, of those practices.

32. Defendant's conduct is fraudulent or deceptive and creates a likelihood of confusion or of misunderstanding in that Defendant omitted and/or failed to disclose material facts regarding Defendant's re-sequencing of transactions. Defendant's failure to disclose its re-sequencing of transactions constitutes deception by omission. Defendant had a duty to disclose these material facts.

33. Defendant's conduct is fraudulent or deceptive and creates a likelihood of confusion or of misunderstanding because a reasonable consumer would have considered Defendant's re-sequencing of transactions and imposition of overdraft fees important in deciding whether to use Defendant as a banking provider or to use a debit card or checks linked to an account held by Defendant in making a purchase of goods or services.

WHEREFORE, Plaintiffs respectfully pray for an Order:

a. entering judgment against Defendant on Count I;

b. granting class certification on Count I pursuant to Fed. R. Civ. P. 23, approving Plaintiffs as the Class Representatives for this action, and approving Plaintiffs' counsel as Class Counsel for this action;

c. requiring Defendant to provide an accounting of any and all profits it derived from the unfair business practices at issue;

d. awarding Plaintiffs and the Class members compensatory damages measured by the amount of excess overdraft fees paid during the relevant period;

e. awarding Plaintiffs and the Class members treble damages;

f. awarding Plaintiffs and the Class members pre-judgment and post-judgment interest on any monetary relief provided;

g. awarding Plaintiffs and the Class members the costs of bringing this suit, including reasonable attorneys' fees; and

h. awarding Plaintiffs and the Class members such other relief as the Court deems just and proper under the circumstances.

## COUNT II
### Unjust Enrichment

34. Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

35. Throughout the relevant period, Defendant routinely re-sequenced the presentation of checking and debit card transactions in accounts made by Plaintiffs and the Class members from largest to smallest and across days to collect more overdraft fees than had it processed those transactions in the order made or received, or from smallest to largest.

36. Throughout the relevant period, Plaintiffs and the Class members conferred non-gratuitous benefits upon Defendant by paying a multitude of unfair and unnecessary overdraft fees.

37. Throughout the relevant period, Defendant appreciated, and had knowledge of, the non-gratuitous benefits that Plaintiffs and the Class members conferred upon it in the form of these unfair and unnecessary overdraft fees.

38. Throughout the relevant period, Defendant accepted and retained the non-gratuitous benefits conferred by Plaintiffs and the Class members with full knowledge that Plaintiffs and the Class members would not receive anything of similar or fair value or substance in return.

39. The unfair and unnecessary overdraft fees Defendant received from Plaintiffs and the Class members were out of all proportion to the value or substance it returned to Plaintiffs and the Class members.

40. Allowing Defendant to retain the non-gratuitous benefits conferred on it by Plaintiffs and the Class members would be unjust and inequitable, because: Defendant was not entitled to the funds at issue; the retained funds represent a substantial windfall to Defendant since it gave rise to the conditions that created the extra overdrafts on its own initiative; Defendant's practices caused Plaintiffs and the Class members to suffer more than a *de minimis*

injury; and Defendant was able to retain the funds at issue only because of its exclusive control over the policies, systems and practices at issue.

WHEREFORE, Plaintiffs respectfully pray for an Order:

a. finding that Defendant was unjustly enriched by its treatment of Plaintiffs and the Class members and entering judgment against Defendant on Count II;

b. granting class certification on Count II pursuant to Fed. R. Civ. P. 23, approving Plaintiffs as the Class Representatives for this action, and approving Plaintiffs' counsel as Class Counsel for this action;

c. requiring Defendant to provide an accounting of any and all profits it derived from the unfair business practices at issue;

d. requiring Defendant to disgorge some or all of the profits, benefits, and other compensation it has received from the Class members as a result of the wrongful conduct at issue in an amount to be determined;

e. awarding compensatory damages to Plaintiffs and the Class members in an amount to be determined;

f. awarding pre- and post-judgment interest to Plaintiffs and the Class members on all compensatory damages awarded;

g. awarding all costs and reasonable attorney's fees incurred prosecuting this claim;

h. awarding Plaintiffs and the Class members such other relief as the Court deems just and proper under the circumstances.

i. enjoining Defendant from continuing to engage in the conduct described in this Complaint; and

j. maintaining jurisdiction over this action after judgment or verdict to ensure Defendant's compliance with the foregoing.

## COUNT III
### Breach of Contract

41. Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

42. Plaintiffs and the Class members entered into a form agreement with Defendant that contains material terms as to the features and services of their checking accounts and debit cards.

43. The form agreement provided to Plaintiffs and the Class members contains substantially similar language relating to each of the material terms.

44. Plaintiffs and the Class members were not able to negotiate any terms or conditions different from those appearing in the form agreement.

45. Implied in its agreement with Plaintiffs and the Class members was the promise to charge penalties and fees, including overdraft fees, in accordance with the principles of fairness, good faith, honesty and reasonableness.

46. Plaintiffs and the Class members accepted the terms of this agreement by, among other things, depositing their funds with Defendant, using checks and debit cards issued by Defendant and paying fees assessed by Defendant during the relevant period.

47. Throughout the relevant period, Defendant breached the agreement by engaging in a uniform course of conduct that included secretly re-sequencing Plaintiffs' and the Class members' checking and debit card transactions from largest to smallest and across days to collect more overdraft fees than had it processed those transactions in the order made or received, or from smallest to largest.

48. As a direct result of Defendant's breaches, Plaintiffs and the Class members have suffered economic damages in an amount to be ascertained at trial.

WHEREFORE, Plaintiffs respectfully pray for an Order:

    a.    finding that Defendant breached their agreement with Plaintiffs and the Class members and entering judgment against Defendant on Count III;

b. granting class certification on Count III pursuant to Fed. R. Civ. P. 23, approving Plaintiffs as the Class Representatives for this action, and approving Plaintiffs' counsel as Class Counsel for this action;

c. requiring Defendant to provide an accounting of any and all profits it derived from the unfair business practices at issue;

d. granting rescission of the agreement between Defendant and Plaintiffs and the Class members;

e. awarding compensatory damages to Plaintiffs and the Class members in an amount to be determined;

f. awarding pre- and post-judgment interest to Plaintiffs and the Class members on all compensatory damages awarded;

g. awarding all costs and reasonable attorney's fees incurred prosecuting this claim;

h. awarding Plaintiffs and the Class members such other relief as the Court deems just and proper under the circumstances.

i. enjoining Defendant from continuing to engage in the conduct described in this Complaint; and

j. maintaining jurisdiction over this action after judgment or verdict to ensure Defendant's compliance with the foregoing.

## COUNT IV
### Breach of the Covenant of Good Faith and Fair Dealing

49. Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

50. Defendant provides bank deposit account services, which include checking, ATM and debit card services, to Plaintiff and the Class pursuant to customer agreements in force at the time.

51. The duty to act in good faith and with fair dealing is implied and incorporated into every contract. This imposes upon each party to the contract a duty of good faith and fair

16

dealing. Where a contract provides one party with discretionary authority, the party with such discretionary authority must exercise its discretion in accordance with the covenant of good faith and fair dealing.

52. Defendant breached the implied covenant of good faith and fair dealing in its contract with Plaintiff and Class by engaging in the re-sequencing of transactions and imposition of overdraft fees detailed herein.

53. Plaintiff and the Class have sustained damages resulting from Defendant's breach of the covenant of good faith and fair dealing.

WHEREFORE, Plaintiffs respectfully pray for an Order:

a. finding that Defendant breached their agreement with Plaintiffs and the Class members and entering judgment against Defendant on Count IV;

b. granting class certification on Count IV pursuant to Fed. R. Civ. P. 23, approving Plaintiffs as the Class Representatives for this action, and approving Plaintiffs' counsel as Class Counsel for this action;

c. requiring Defendant to provide an accounting of any and all profits it derived from the unfair business practices at issue;

d. granting rescission of the agreement between Defendant and Plaintiffs and the Class members;

e. awarding compensatory damages to Plaintiffs and the Class members in an amount to be determined;

f. awarding pre- and post-judgment interest to Plaintiffs and the Class members on all compensatory damages awarded;

g. awarding all costs and reasonable attorney's fees incurred prosecuting this claim;

h. awarding Plaintiffs and the Class members such other relief as the Court deems just and proper under the circumstances.

    i.    enjoining Defendant from continuing to engage in the conduct described in this Complaint; and

    j.    maintaining jurisdiction over this action after judgment or verdict to ensure Defendant's compliance with the foregoing.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury.

Respectfully submitted,

Dated: June 1, 2012

/s/ David J. Cohen
David J. Cohen
KOLMAN ELY, PC
414 Hulmeville Ave.
Penndel, PA 19407
Telephone: (215) 750-3134
Facsimile: (215) 750-3138
dcohen@kolmanlaw.net

Marc L. Godino
Lionel Z. Glancy
Casey E. Sadler
GLANCY BINKOW & GOLDBERG LLP
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
info@glancylaw.com

Jon A. Tostrud
TOSTRUD LAW GROUP, P.C.
1901 Avenue of the Stars, Suite 200
Los Angeles, CA 90067
Telephone: (310) 278-2600
Facsimile: (310) 278-2640
jtostrud@tostrudlaw.com

*Attorneys for Plaintiffs and the Putative Class*